IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


UNITED STATES OF AMERICA,  *

       Plaintiff *

v.          *  CIVIL NO. GLR-14-3273

$16,980.00 U.S. CURRENCY, *

       Defendant *

      *  *  *  *  *  *  *

## CLAIMANT'S REPLY TO PLAINTIFF'S RESPONSE TO CLAIMANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF PLAINTIFF'S CAPACITY TO SUE AND PLAINTIFF'S AUTHORITY TO SUE IN A REPRESENTATIVECAPACITY

Now comes Danny Jose Polanco Ramirez, Claimant, by and through his attorney, Brian J. Murphy, and files this Reply to Plaintiff's Response to Claimant's Motion for Summary Judgment on the Issue of Plaintiff's Capacity to Sue and Plaintiff's Authority to Sue in a Representative Capacity.  As reasons therefor, the Claimant asserts:

1. Plaintiff cites *United States v. Caceres*, 440 U.S. 741 (1979) and asserts that "the A.G. Order is an internal Department of Justice policy that confers no rights on any private party."  *See* ECF No. 11, paragraph 5.  Presumably, Plaintiff is arguing that by virtue of *Caceres, supra*, the DOJ policy in question has no effect on this case. Plaintiff, however, misconstrues the holding in *Caceres*.  *Cacares* was a criminal case and the issue there was the effect of an internal DOJ policy regarding electronic surveillance on the suppression of evidence pursuant to constitutional criminal procedure.

In contrast, the instant forfeiture case is a civil case and the issue here is whether the Plaintiff can still proceed in this lawsuit when its authority to bring this type of lawsuit has been terminated.  As such, *Cacares* is inapplicable.  The issue in this case is more akin to the issue of the capacity of a corporation to sue when its charter, which enables it to do business as a corporation and, thus, to sue, has been terminated.  *See, e.g., Gelfman International Enterprises v. Miami Sun International Corp.*, 2009 WL 2242331 (E.D.N.Y).

2.      Plaintiff suggests that "the policy by its terms applies only to seizures that occur after January 16, 2015."  *See* ECF No. 11, paragraph 6.  The plain language of the order, however, belies this contention.  The order is not only directed to "all participants in the Department of Justice Asset Forfeiture Program," who are presumably the federal agencies who might want to administratively adopt future state or local seizures.  The order is also directed to "all department of Justice attorneys," who are the lawyers who handle these cases once they have been filed in federal court.  *See* ECF No. 10, Exhibit A, paragraph 1.  In addition, although the order "applies prospectively," its prohibition uses the language "federal adoptions" and not, for example, the language "state seizures that are being considered for federal adoption."  *Id.*, paragraph 4.  The instant case is an example of one the "federal adoptions" now being litigated in federal court.

3.      Plaintiff cites a footnote to a decision in this district and argues that the "holding" of that case is that "the January 16, 2015, policy order on adoptive forfeitures applies prospectively only."  *See* ECF No. 11, paragraph 6.  Plaintiff, however, misconstrues the definition of "holding."  A reading of Judge Bennett's opinion in the

cited case reveals that what Plaintiff terms a 'holding" is actually "obiter dicta," since Judge Bennett's comments were gratuitous and not necessary for his decision. *See United States v. 106,647 in U.S. Currency*, No. 13-cv-2433-RDB; ECF No. 18, page 7, n. 4; Black's Law Dictionary (9th Ed. 2009) at 800; *Id*. at 1177.   In addition, as a trial court opinion, any authority presented by Judge Bennett's opinion is persuasive only, and not binding.

4.      Plaintiff argues that the A.G. Order, because it is riddled with exceptions, does not prevent the continuation of this lawsuit and, indeed, would not even prevent its initiation if the seizure occurred today. *See* ECF No. 11, Paragraph 7.   Two of these exceptions—"property that directly relates to public safety concerns" and "cases in which federal and state or local authorities are working together," *Id*.—are not relevant to this case.   Plaintiff cites a third exception—"the property is subsequently seized pursuant to a federal seizure warrant," *Id.*—and suggests that this exception could be used in order to federalize any and all local seizures.   Since this sweeping interpretation of this exception would cause the exception to swallow the rule and would thereby render Attorney General Holder's order toothless, Plaintiff's interpretation cannot be correct.

5.      In any event, however, Plaintiff's response to the motion for summary judgment is inadequate and, for that reason, summary judgment in favor of Claimant must be granted.   Rule 56, as well as the case law interpreting that rule, requires that a party responding to a motion for summary judgment do more than rest on its pleadings and then present legal argument in opposition to the movant's motion. *See* Rule 56(c), (e); *Cray Communications, Inc. v. Novatel Computer Systems, Inc*., 33 F.3d 390 (1994).

3

In the instant case, Plaintiff has presented no evidence, by affidavit or otherwise, supporting its interpretation of Attorney General Holder's order.   For example, no internal communication or follow-up orders or memoranda by Attorney General Holder or anyone else with authority—items which could have shed light on the reach of the order in question—have been presented.  All that has been presented is the opinion of one Assistant United States Attorney, by way of argument, that Claimant's position is incorrect.  That is not enough.

WHEREFORE, for the foregoing reasons, Claimant respectfully requests that this Court grant summary judgment on the issue of the Plaintiff's capacity to sue and the Plaintiff's authority to sue in a representative capacity.

Respectfully submitted,

/s/
_____
Brian J. Murphy
1206 St. Paul Street
Baltimore, MD 21202
(410) 347-2030
Counsel for Claimant
Danny Jose Polanco Ramirez